[No. 24725. Department Two. October 26, 1933.]

F. J. CARLYLE, *Respondent,* v. STANLEY MAJEWSKI *et al.,*
*Appellants.*[1]

*Leo Teats* and *Ralph Teats,* for appellants.

*Wayne W. Keyes,* for respondent.

TOLMAN, J.—Respondent, as plaintiff, prosecuted
this action to recover for services rendered under a
written contract. The case was tried to the court, re-
sulting in findings favorable to the plaintiff and a judg-
ment thereon against the defendants in the sum of
$3,746.59, with interest and costs. The defendants
have appealed.

The errors assigned question the facts as found, as
well as the law which was applied by the trial court.
Thus we have been required to give a careful study to
all of the evidence introduced, and upon the material
and controlling points we find the following facts to be

[1]Reported in 26 P. (2d) 79.

688

established, chiefly by respondent's own testimony, and without any serious conflict.

The appellants, some time before December 1, 1923, purchased from the respondent a restaurant business in the city of Tacoma, long carried on by him under the name of Carlyle Cafeteria, paying the purchase price in full. Desiring, apparently, to have the benefit of the name and of respondent's personal services, for a time at least, a written agreement was executed by the parties on the date last mentioned, which recited the facts of the prior purchase of the business and the full payment of the purchase price by the appellants and their desire to employ the respondent "to manage and conduct the said cafeteria in the same manner as he has heretofore conducted the same until the parties hereto shall mutually agree to cancel and annul this contract." The contract then provided:

"Now THEREFORE, It is mutually understood and agreed between the parties hereto, that the party of the second part for and in consideration of one-half of the net profits of said cafeteria, will remain from and after the date of this contract until the same shall be mutually cancelled and annulled, as the manager of said cafeteria, and will conduct the same in the same manner as it has been heretofore conducted by him.

"It is further UNDERSTOOD and AGREED between the parties hereto, that the party of the second part shall have the right and privilege during the existence of this contract to give to the management of said cafeteria only such time as he deems advisable, and that he may take a vacation at such times during each year of the continuation of this contract as he may desire, and that during such times as he may be absent from said business he shall be entitled to one-half of the net profits of said business the same as during the time he shall actually engage at and in the conduct of said business."

There are other provisions following not now material, except, perhaps, that it is covenanted that the

appellants' right to the use of the name "Carlyle Cafeteria" shall end with the contract.

Respondent entered upon his duties at the time the contract was executed, and continued to perform them until about the end of January, 1933, when the contract was terminated by what amounted to mutual consent. Upon the trial below, respondent produced evidence indicating that the net profits of the business for the entire period while the contract was in force amounted to $25,016.94, that he had been paid $8,550, and he rested his case upon the theory that there was still due him the difference between the sum he had received and one-half of the total net profits for the period. The findings made by the trial court seem to follow this theory, and, consequently, there are no findings upon several points thoroughly established by the evidence which we consider controlling.

It is conclusively established, in fact, admitted, that respondent, as manager, had entire control and management of the cash received and disbursed, and of the books of account. He took the cash from the cash register each day, entered the amounts in the cash book, deposited the money in the bank, and drew the checks by which it was disbursed. At irregular periods, by agreement or common consent, whenever there was thought to be sufficient money on hand for that purpose, the respondent divided the available funds and wrote the checks disbursing such funds, one half to himself and the remaining half to the appellants. Always, the amount divided was divided equally, and each division of funds appears to have been a full, complete and final division of profits under the contract as of the time it was made.

Respondent, himself in charge of the business, and himself keeping the books of account showing receipts, expenses, losses and gains, and himself calculating the

amounts, and, through his control of the cash and bank account, dominating each of the periodic divisions of profits, is in no position to question the finality of each of such settlements. This course of conduct over a long period of years, without protest or dissent on either side, must be held to be a practical construction of the meaning of the contract by the parties themselves, which the courts are bound to recognize and enforce.

Respondent seems to rely upon the fact that, during the contract period, a firm of accountants was employed to check over the books of account monthly and prepare statements which, apparently, were used for income tax purposes. From these statements, respondent gets his figures showing the total profits for the contract period, and the difference here in dispute arises very largely, if not wholly, from the fact that many items which the respondent charged to expense on the books kept by him, the accountant considered capital investments under the Federal income tax law.

There is no proof in the record of just what furniture, fixtures and other physical property appellants received when they purchased the business, or as to whether what the accountant considered betterments were mere replacements of what was worn out and had become obsolete in the conduct of the business, or whether, in fact, the so-called improvements and betterments were actually such as, between the parties to the contract, would enhance the assets of the owners and for which the owners alone should pay. Certainly, the contract did not contemplate a consumption of the fixed assets of the business so that respondent would again receive one half the value of that for which he had already been paid in full.

Not having shown that the disbursements, which he considered and charged as expenses and which the ac-

countant considered capital investments, were, in fact, anything other than expenses as between the parties, and having shown that, notwithstanding the accountant's monthly statements, the parties had by mutual agreement accepted these disbursements as expenses and divided the profits, as shown by the books kept by the respondent, we are convinced that, on his own testimony, he had no cause of action.

The judgment appealed from is reversed, and the cause remanded with directions to dismiss the action.

BEALS, C. J., HOLCOMB, BLAKE, and GERAGHTY, JJ., concur.